IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEVIN C. JEFFERSON,

    Plaintiff,

v.                                                 Civil Action No. 3:10cv166

REGAL CINEMAS, INC.,

    Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Regal Cinemas, Inc.'s ("Regal") Motion for Summary Judgment (Docket No. 20), Regal's Motion in Limine as to Other Accidents (Docket No. 24), Plaintiff Kevin C. Jefferson's Motion to Compel (Docket No. 28), and Jefferson's Motion to Continue (Docket No. 44). On September 13, 2010, Jefferson responded to Regal's Motion for Summary Judgment (Docket No. 26), and on September 17, 2010, Regal replied (Docket No. 31). On October 1, 2010, the Court heard oral argument on all pending motions. This matter is ripe for adjudication. The Court's jurisdiction is properly invoked under 28 U.S.C. §§ 1441, 1332,[1] and 636(c).[2] For the following reasons, the Court GRANTS Regal's Motion for

---

[1] The amount in controversy exceeds $75,000, and diversity of citizenship exists. 28 U.S.C. § 1332. Jefferson is a citizen of Virginia, and Regal is a Tennessee corporation with its principal place of business in Tennessee. (Notice of Removal ¶ 4.) (Docket No. 1.)

[2] On May 20, 2010, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge, and the Honorable Henry E. Hudson reassigned the case to the undersigned Magistrate Judge. (Docket No. 8.)

Summary Judgment. Accordingly, the Court DENIES AS MOOT Regal's Motion in Limine as to Other Accidents and Jefferson's Motion to Continue and DENIES AS UNTIMELY AND MOOT Jefferson's Motion to Compel.

## I. Factual and Procedural Background

### A. Undisputed Facts

On December 16, 2007, Jefferson made plans to attend a matinee movie with his father, Nathaniel Jefferson, and his brother, Kenneth Jefferson. (Def.'s Br. Supp. Mot. Summ. J. ("Br. Supp.") Ex. 1, Kevin C. Jefferson Dep. ("Kevin Jefferson Dep.") 38:19-21, 39:12-15.) That same day, Jefferson arrived at Regal's Southpark 16 theater between 2:15 and 2:30 p.m and met his father and brother. (Kevin Jefferson Dep. 39:24-40:2, 43:6-15.) The three men purchased tickets at the box office for the 2:35 p.m. showing of *Hitman*, displayed in Auditorium 15. (Kevin Jefferson Dep. 44:11-20, 49:8-10.) This was the second scheduled showing of *Hitman* in Auditorium 15 on December 16, 2007. (Br. Supp. Ex. 2.) The first showing of *Hitman* had been at12:15 p.m., but no tickets were sold to the first showing due to a temporary power outage. (Br. Supp. Ex. 2; Br. Supp. Ex. 3; Pl.'s Br. Opp'n Mot. Summ. J. ("Br. Opp'n") Ex. 3, Kenneth N. Jefferson Dep. 19:20-20:1.)

After purchasing their tickets, Jefferson and his family proceeded directly to Auditorium 15 and did not purchase anything from the concession stands. (Kevin Jefferson Dep. 48:12-17.) Auditorium 15 only has one entrance. (Kevin Jefferson Dep. 49:17-19.) Upon entering the auditorium, a corridor with a slight incline leads to the seating area. (Kevin Jefferson Dep. 49:23-50:16, 55:7-20.) At the apex of the corridor, a customer may either proceed straight to lower seating or make a U-turn around a wall and proceed upstairs to higher seating.

(Kevin Jefferson Dep. 50:1-16.) Once the Jeffersons reached the apex of the corridor, they made a U-turn around the wall and proceeded upstairs to approximately the fourth row. (Kevin Jefferson Dep. 50:17-51:17.)

The movie had already started when the Jeffersons entered the theater. (Kevin Jefferson Dep. 49:13-16; Br. Supp. Ex. 7, Kenneth N. Jefferson Dep. ("Kenneth Jefferson Dep.") 26:7-10.) Neither Jefferson nor his family saw any trash in the corridor when they entered the theater. (Kevin Jefferson Dep. 54:23-55:6; Kenneth Jefferson Dep. 27:5-10.) Likewise, neither Jefferson nor his family saw anything else on the floor in the movie theater that day. (Kevin Jefferson Dep. 86:4-22; Kenneth Jefferson Dep. 27:5-10, 48:15-17; Br. Supp. Ex. 8, Nathaniel A. Jefferson Dep. ("Nathaniel Jefferson Dep.") 22:22-25.)

The Jeffersons watched the entire movie without leaving their seats or standing. (Kevin Jefferson Dep. 51:18-23, 52:25-53:3; Kenneth Jefferson Dep. 27:24-28:1; Nathaniel Jefferson Dep. 21:13-15.) No one else was in the auditorium, and the Jeffersons did not see anyone enter the auditorium during the movie. (Kevin Jefferson Dep. 52:17-24; Kenneth Jefferson Dep. 26:4-6; Nathaniel Jefferson Dep. 21:19-22:1.) However, the entrance to the auditorium and the inclined corridor were not visible from their seats. (Kevin Jefferson Dep. 92:9-12; Nathaniel Jefferson Dep. 22:2-4.) It is possible that an unauthorized person leaving another movie could have entered Auditorium 15 during the showing of *Hitman*. (Br. Opp'n Ex. 5, Paul Harry Saylor Dep. ("Saylor Dep.") 22:9-21.) Regal does everything it can to prevent that from happening. (Saylor Dep. 22:12.)

The movie lasted about one hour and forty-five minutes. (Br. Supp. Ex. 2; Kevin Jefferson Dep. 53:5-6.) When the movie ended, the Jeffersons exited their row, and Jefferson

was in the lead. (Kevin Jefferson Dep. 72:18-22.) As he walked down the sloped corridor, Jefferson's left foot stepped on a popcorn bag and slid out from underneath him. (Kevin Jefferson Dep. 73:5-22.) As Jefferson fell to the ground, he reached out his left arm for the handrail. (Kevin Jefferson Dep. 73:5-7.) His forearm was caught between the handrail and the wall, and he injured his lower left arm. (Kevin Jefferson Dep. 73:5-7.) Jefferson did not see the popcorn bag on the carpet until he pulled himself up from the ground. (Kevin Jefferson Dep. 84:12-85:5.) Jefferson and his family do not know how the popcorn bag got on the floor or how long the bag was on the floor before Jefferson's fall. (Kevin Jefferson Dep. 88:16-21; Kenneth Jefferson Dep. 47:23-48:14; Nathaniel Jefferson Dep. 33:3-17, 36:12-15.)

Regal makes most of its money from concession sales. (Saylor Dep. 11:20-21.) At the end of the day, workers clean out theaters using leaf blowers. (Saylor Dep. 13:14-21.) At the beginning of the next shift, a manager conducts an inspection of the entire theater. (Saylor Dep. 36:9-10.) Finally, employees check the auditorium at least twice during each showing of a movie. (Saylor Dep. 16:13-25.) Based on this cleaning schedule, at the time of Jefferson's accident, Auditorium 15 should have been checked at least six times after the end of the last showing on December 15, 2010. (Saylor Dep. 36:7-37:1.)

### B. Procedural Background

On December 11, 2009, Jefferson filed a complaint in the Circuit Court of Chesterfield County against Regal. (Docket No. 1 Ex. 1.) Regal filed an answer on February 23, 2010. (Docket No. 1 Ex. 2.) On March 10, 2010, Regal filed a Notice of Removal in this Court. (Docket No. 1.)

Jefferson seeks $500,000 in compensatory damages plus pre-judgment and post-judgment interest and costs for this personal injury action. (Compl. at 3.) Jefferson's complaint sets forth three separate counts against Regal. Count One alleges that Regal breached its duty to its customers by failing to "use ordinary care to clean the movie theater following each showing." (Compl. ¶¶ 10-11.) Count Two alleges that Regal negligently permitted an unsafe condition on the floor, in violation of its duty "to use ordinary care to have the premises in a reasonably safe condition consistent with the invitee's use of the premises." (Compl. ¶¶ 14-17.) Count Three alleges that Regal negligently failed to warn of an unsafe condition on the floor that created an unreasonable risk of injury to individuals, including Jefferson, in violation of its duty to warn individuals of unsafe conditions about which it knew, or by the use of ordinary care should have known. (Compl. ¶¶ 20-24.)

Regal now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Regal argues that Jefferson has presented no "admissible evidence that [Regal] was on notice, actual or constructive, of the existence of the popcorn bag on the floor prior to [Jefferson's] fall." (Br. Supp. 2.) Plaintiff argues that the following material facts are in dispute: (1) that for a seventeen-hour period there were no customers in Auditorium 15; (2) that it would be speculation to assume any customer other than Jefferson and his family entered Auditorium 15 on December 16, 2007 prior to Jefferson's fall; and, (3) that the trash, a popcorn bag, was present on the floor the day before Jefferson's accident.[3] (List of Disputed Material Facts.)

---

[3] While Jefferson argues that other facts are disputed and in need of litigation, it appears that many of the additional facts listed are not disputed by Regal for the purposes of the Motion for Summary Judgment. (Br. Opp'n Ex. 8, List of Disputed Material Facts Which are Genuinely in Need of Litigation ("List of Disputed Material Facts").) Instead, Regal disputes the relevance of the facts to the issue of constructive knowledge. (Br. Supp. 5-6.)

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## III. Analysis

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005). In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). As the Supreme Court of Virginia has articulated:

> "The rules applicable to slip-and-fall cases are well settled. . . .The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been known to the [store owner]."

*Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (*quoting Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962) (alterations in original)).

A prima facie case of premises liability requires first that the plaintiff prove the existence of an unsafe or dangerous condition. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004). Next, "a plaintiff must, in order to establish a defendant's negligence, prove '*why and how* the incident happened.'" *Id.* at 451 *(quoting Town of West Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Id.* at 452.

A. <u>**Actual Notice**</u>

Jefferson fails to establish that Regal had actual notice of the unsafe condition that resulted in Jefferson's injuries. Indeed, Jefferson readily admits Regal did not have actual knowledge of the hazardous condition, and the record before the Court support this admission. (Br. Opp'n 5-6 (admitting that constructive knowledge is at issue); Kevin Jefferson Dep. 104:8-24; Kenneth Jefferson Dep. 48:1-11.) Therefore, Jefferson must establish that Regal had constructive notice of the unsafe condition resulting in his injuries. *See Colonial Stores*, 125 S.E.2d at 190.

B. <u>**Constructive Notice**</u>

Even viewing the evidence most favorably to Jefferson, Jefferson fails to establish that Regal had constructive notice of the unsafe condition resulting in Jefferson's injuries. To prove constructive notice, a plaintiff may introduce "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). Thus, a prima facie case requires evidence of when an unsafe condition developed. *Id.*

Although Jefferson contends that the popcorn bag was on the floor for a period of seventeen hours prior to Jefferson's injury, the record does not support this assertion. Jefferson argues that no one entered Auditorium 15 between the last showing on December 15, 2010 and the 2:35 p.m. showing of *Hitman* on December 16, 2010 aside from Jefferson and his family. (Br. Opp'n 6.) Because Jefferson and his family did not purchase any popcorn, Jefferson argues that the popcorn bag must have been left by a customer the evening before. (Br. Opp'n 6.) Jefferson further contends that because six inspections of the theater should have been performed

according to routine procedure and all six inspections missed the popcorn bag, Regal was on constructive notice of the defective condition.[4] (Br. Opp'n 9.) Jefferson also wants the Court to infer that he and his family did not see the popcorn bag on the floor in the corridor upon their entrance into Auditorium 15 because the lights were dim and the bag blended into the carpet pattern.

However, according to the record before the Court, these assertions of "material facts" constitute inferences beyond those this Court may draw under the Federal Rules of Evidence or under summary judgment standards, even when viewing the facts favorably to Jefferson. *See Sylvia Dev. Corp.*, 48 F.3d at 818. "Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984). Jefferson and his family admit that they did not see the popcorn bag in the corridor as they entered Auditorium 15. Jefferson and his family also admit that, from their seats, they could not see the corridor in which the bag rested. While it is undisputed that only Jefferson and his family were authorized customers at the 2:35 p.m. showing, it is not a reasonable inference to say that no one else could have entered the theater corridor during the

---

[4] At the October 1, 2010 hearing, Jefferson argued that records from the Virginia Electric & Power Company ("VEPCO") show a power outage from 10:30 a.m. until 1:45 p.m. at Regal on December 16, 2007. (Br. Opp'n Ex. 2.) Jefferson contends that, from these records, the Court may infer that during the power outage Regal did not perform the routine inspections. While Regal admitted that the VEPCO records are authentic responses to a subpoena, Regal argued that the records are inadmissible hearsay. The objection is sustained. Absent testimony establishing relevance, authenticity, and admissibility (much less testimony explaining how to read the records), this Court is precluded from considering the VEPCO records before it. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

showing.[5] Viewing the evidence in the light most favorable to Jefferson and considering competing inferences to the contrary, the Court cannot make a reasonable inference from the record that the popcorn bag was on the floor of the corridor for a period of seventeen hours prior to Jefferson's injury. *See Anderson*, 477 U.S. at 255; *Sylvia Dev. Corp.*, 48 F.3d at 818. Jefferson argues evidence as to a routine of cleaning, but he offers no evidence as to the actual cleaning that did or did not happen on the day of the accident. This Court finds that Virginia law and the Federal Rules of Evidence require more evidence to show constructive knowledge.

### 1. **Virginia Law on Constructive Notice**

Virginia law distinguishes between cases where a plaintiff alleges negligence from a defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a defendant's "passive conduct." *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). Allegations of "affirmative conduct" involve cases in which a defendant was the "genesis" of the dangerous condition. *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000) (unpublished) (finding that the trial court properly submitted the issue of negligence to the jury when the plaintiff alleged that the store affirmatively created the dangerous condition by placing the soap dispenser over the floor rather than over the sink). In "affirmative conduct" cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have

---

[5] Without citing authority for the proposition, Jefferson seems to argue that Virginia's constructive notice doctrine is different when applied to a "closed" or restricted environment. (Br. Opp'n 7-8.) Even assuming a ticket is required to enter the movie theater, the record before the Court shows that unauthorized customers might enter a theater despite Regal's efforts to prevent that from happening. For instance, a customer might enter an incorrect theater after buying concessions or using a restroom. Regardless, Jefferson cites no authority that would allow this Court to distinguish Virginia premises liability law as applied to movie theaters.

10

foreseen the risk of danger resulting from such circumstances.'" *Id.* (*citing Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 230 (Va. 1986)) (alteration in original). In addition, "the foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (finding knowledge of the potential danger created by bolts of fabric leaning on a cutting table sufficient to support a jury finding of negligence).

Because Jefferson fails to show any affirmative conduct by Regal that created the hazardous condition, Jefferson improperly relies on Virginia cases holding that evidence that the defendant affirmatively caused or attributed to the existence of the dangerous condition was sufficient to prove actual or at least constructive knowledge.[6] *See id.* at 714; *Ashby*, 440 S.E.2d at 604-05; *Holcombe v. NationsBanc Fin. Servs. Corp.*, 450 S.E.2d 158, 159-60 (Va. 1994; *Yeatman*, 348 S.E.2d at 231; *Garlick v. Safeway, Inc.*, No. 082469, 2009 WL 3447286, at *1-2 (Va. Oct. 23, 2009) (unpublished).

---

[6] Jefferson also relies on these cases for the proposition that evidence that an employee was present to observe the defective condition satisfies constructive notice. In support of his argument, however, Jefferson extends beyond admissibility standards the inferences he asks this Court to draw. He appends an unauthenticated Exhibit 6 that purports, through hearsay, to show that Kim Ford performed the routine cleaning inspections on that day.

Such an inference from this document cannot stand. First, even if this court were to review the document, the location that appears to speak to Auditorium 15 on page two is blank. Second, Paul Saylor testified that the theater is not required to keep records of the conducted inspections, which he testified are supposed to happen regularly. (Saylor Dep. 25:14-15.) This Court does not have any such record. Third, no testimony is before the Court from either Kim Ford or any usher that an inspection was indeed conducted.

Jefferson's presumptions are too attenuated from the evidence before the Court to sustain this challenge on summary judgment. Because Jefferson has failed to show any evidence as to when the popcorn bag was left on the floor, he has failed to show that Ford or any other employee missed the popcorn bag during their inspections. *See Parker*, 396 S.E.2d at 649, 651 ("Because [the plaintiff] failed to establish that [the defendant] placed the [item] on the floor or that [the defendant's employee] missed it during [the cleaning], it became [the plaintiff's] burden to prove that [the defendant] had either actual or constructive notice of the [item's] presence and failed to remove it.").

Further, Jefferson's reliance on *Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157 (Va. 1977) is misplaced[7] because in that case the Supreme Court of Virginia held that evidence of other similar accidents or occurrences involving the same or similar defect in an offending ramp was admissible to show that the defendant had *actual knowledge* of a defect in the particular ramp that caused the plaintiff's injury. *Id.* at 162. In this case, Jefferson asserts no evidence that Regal knew of this particular popcorn bag's existence on the floor, and it appears there is none. This case instead compares favorably to *Pulley*, where the defendant had installed a soda machine near the entrance to the store, but the plaintiff failed to prove that the defendant had actual or constructive knowledge of the particular soda bottle on the floor which caused the accident. *Pulley*, 125 S.E.2d at 189-90. Under *Pulley*, Jefferson has not shown constructive knowledge.

### 2. Admissible Evidence Before This Court

Jefferson has failed to point to any evidence as to how the popcorn bag got on the floor of Auditorium 15 and how long the popcorn bag remained on the floor. Virginia law requires that he do so to carry his burden of proving that Regal was on constructive notice. *Parker*, 396 S.E.2d at 651; *Pulley*, 125 S.E.2d at 190 (stating that it was "incumbent upon the plaintiff to prove that the defendant knew [the dangerous condition] was there, or, to show that the [item] had been there long enough that the defendant ought to have known of its presence"). "Hence, if

---

[7] Jefferson relies on *Smith* for the proposition that he need not show constructive notice of the specific popcorn bag because Regal was on notice of a general recurring dangerous condition caused by trash left on the floor. Were this true, nearly any workplace with a regular cleaning schedule would be on constructive notice of trash on the floor between cleanups. This Court reads Virginia law, in the absence of any affirmative conduct by Regal, as requiring more specific proof than that.

12

the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Grim*, 434 S.E.2d at 890 (*citing Parker*, 396 S.E.2d at 651).

Jefferson and his family admit that they do not know how the popcorn bag got on the floor or how long the bag was on the floor before Jefferson's fall, that they did not see any trash in the corridor, that they did not see any other trash on the floor of the movie theater that day, and that they were unaware of the item on the floor until after his fall. *See Ashby*, 440 S.E.2d at 605 (noting that no one, not even plaintiff, knew of the dangerous condition beforehand, and thus, the plaintiff failed to establish actual or constructive knowledge). Nothing about the bag itself suggests how long it could have been in the corridor.[8]

> "There is no evidence in this case that [the defendant] knew of the presence of the [item] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed upon the floor an instant before [the plaintiff] struck it as it is to infer that it had been there long enough that [the defendant] should, in the exercise of reasonable care, have known about it."

*Parker*, 396 S.E.2d at 651 (*quoting Pulley*, 125 S.E.2d at 190). Absent evidence of when the unsafe condition was created, Jefferson cannot establish that a sufficient amount of time passed to provide Food Lion constructive notice of the condition, which is a required component of his prima facie case. *See Hodge*, 360 F.3d at 454.

Therefore, the Court will GRANT Regal's Motion for Summary Judgment.

---

[8] Unlike in *Davis v. Spotsylvania Mall Co.*, No. CL95-477, 1997 WL 1070525 (Va. Cir. Ct. Feb. 19, 1997), where the circuit court held that evidence regarding the dried-out condition of the ketchup, which caused the accident, could prove that it had been on the floor for a considerable period of time, there is no evidence before this Court as to the condition of the popcorn bag that would allow a reasonable inference as to how long the bag was on the floor. *See id.* at *2.

## IV. Conclusion

For the foregoing reasons, the Court shall GRANT Regal's Motion for Summary Judgment. (Docket No. 20.) Accordingly, the Court shall DENY AS MOOT Regal's Motion in Limine as to Other Accidents (Docket No. 24) and Jefferson's Motion to Continue (Docket No. 44) and DENY AS UNTIMELY AND MOOT Jefferson's Motion to Compel (Docket No. 28).

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 10/4/10